JULIUS G. GOESS v. CHICAGO, BURLINGTON & QUINCY RAILWAY
COMPANY.[1]

June 26, 1908.

Nos. 15,575—(109).

**Inspection of Cars—Negligence of Switchmen.**

While respondent was engaged in inspecting a train of cars which was standing on a track in appellant's railway yards, the yard switchman caused the train to be moved, thereby injuring him. *Held:* (1) The evidence was sufficient to justify the jury in finding that the switchmen at the north end of the yards were negligent in moving the car upon which respondent was at work without giving him timely warning. (2) It does not conclusively appear from the evidence that it was the duty of the inspectors, while inspecting trains within the yards, to protect themselves and give notice to the switching crew at the north end of the yards that inspection was in progress. (3) The court did not err in charging the jury with reference to the rules, the practice, and the duties of inspectors and switchmen. (4) The verdict was not excessive. (5) There was no abuse of the court's discretion in denying appellant's motion to amend its answer.

Action in the district court for Ramsey county to recover $2,000 for personal injuries sustained by plaintiff while in the employ of defendant company as a car inspector.

When the case was called for trial defendant asked leave to amend its answer by inserting an allegation that prior to the commencement of the action the plaintiff, for value received, released and discharged the defendant from any and all liability on account of his injuries and released and discharged the cause of action set out in the complaint. Defendant's counsel informed the court that the defendant's claim agent had first learned of this release on the evening of the preceding day and had communicated the fact to them, who had not previously known of such release, on that very morning, and that upon the facts stated by the claim agent, the alleged release, in the opinion of counsel, was valid and a bar to the action. Plaintiff's counsel stated that the action was begun about February 10, 1907, was

[1] Reported in 116 N. W. 1115.

noticed for trial on March 12, and was called for trial June 5, 1907. The motion to amend was denied.

The case was tried before Bunn, J., and a jury which rendered a verdict in favor of plaintiff for $1,500. From an order denying defendant's motion for judgment notwithstanding the verdict or for a new trial, it appealed. Affirmed.

*Lightner & Young,* for appellant.

*James Mattimore* and *M. J. Ryan,* for respondent.

LEWIS, J.

While respondent was inspecting a car in a train which was standing on a track in appellant's yards, the same was struck by cars switched onto that track from the north end, and respondent was injured.

1. The verdict was justified by the evidence. Respondent, together with a fellow inspector, worked nights, and the accident occurred about eight o'clock p. m., October 1, 1906. Respondent testified that the only rule he knew anything about required the inspectors to place a blue light at the head end of trains which came into the yards from the north; that he knew of no rule which required any light on the north, or rear end of any cars or trains; that they were required to protect themselves against switching operations at the south end, but were relieved from such duty at the north end, of the yards. Appellant contends that it was the duty of the inspectors to protect themselves against danger from switching operations by putting out a light, keeping watch, or by notifying the switching crew that they were engaged in inspecting.

The only rule introduced in evidence reads: "When inspecting cars, persons doing such work must protect themselves by placing a blue signal on the end of each car or train." Considered by itself, this rule is ambiguous. It does not state that lights must be placed on both ends of a train or cars, and does not state on which end the light specified is to be placed. The evidence on the part of respondent tends to indicate that no rule as to lights was enforced, except as to trains which entered the yards from the north, and then the light was put on the front, or south, end of the train. The switchman, Mossong, in charge of the north-end switching operations that night, testified that he had seen lights on the front end of trains, facing

south, but never on the rear, or north, end. He also testified that in the absence of a light, or verbal notice, he always carried on switching operations regardless of which way the trains in the yard were headed. Walz, the general foreman of the yards, testified that inspectors were supposed to protect themselves, and that when no lights were out, or notification given, the switchmen had a right to go ahead with the switching. It reasonably appears from the evidence that, whatever was intended, the rule in practice was that lights were put out at the front end only on trains coming into the yards from the north, and that no lights were used on the north end of a train.

There was a conflict of evidence as to whether the inspectors were obliged to look out for themselves and give notice to the switchmen at the north end, or whether the switchmen at that point were required to ascertain if cars were being inspected and warn the inspectors before moving cars in that direction. Although the evidence is conflicting, and in some respects not satisfactory, the question was one of fact for the determination of the jury.

2. Many exceptions were taken to the charge of the court, directed to the point that the court failed to submit to the jury some of the questions at issue, viz.: That the inspectors were required to watch, knowing that switching was constantly going on, and if they did not do so they assumed the chances of the cars being moved, and that the switchmen had a right to carry on switching operations unless the inspectors put out a light, or otherwise notified them that inspection was going on, and that, in absence of notice, the switchmen had a right to assume that the inspectors would look out for themselves. We have read with great care the instructions and do not consider them fairly open to criticism.

The court, with great elaboration, stated the claims of the respective parties: That the negligence charged consisted in shunting certain cars onto the track on which inspection work was going on without taking means to find out if any inspectors were at work there; that appellant claimed the switchman was not negligent in allowing the cars to collide with the train, because he had not received any warning or notice that any one was at work on the train, and because there was no signal on the train and no verbal notice had been given, and

104 M.—32

that appellant was in no manner negligent in switching; that respondent was negligent in not putting out a light, or otherwise notifying the switchman not to switch at that end. These propositions were many times reiterated, and, in our judgment, set forth the real issues submitted and tried. Although the court did not, in so many words, state to the jury that appellant claimed that the switchmen would have the right to carry on switching operations at the north end of the track unless notified, either verbally or by signal light, and that under the evidence, in the absence of such notice, the switchmen would have the right to assume that the inspectors would look out for themselves, such was the necessary inference from what the court did say.

The question before the court was: Upon whom did the responsibility of giving notice rest—upon the inspectors or upon the switching crew? There was conflict of testimony. If, under the rules and practice, the inspectors were required to put out a light or notify the switchmen, then, in the absence of such signal or notice, the switchmen would be justified in going on with the switching, and the inspectors continued work at their peril. On the other hand, if, under the rules and practice, the inspectors were not required to take any such precautions as to the north end of the yard, and the switchmen were required to ascertain whether inspectors were at work before moving any cars, then the responsibility of proceeding without notifying the inspectors rested upon the switching crew.

3. While respondent was not severely injured, it does not appear that he has entirely recovered; and we find no reason for interfering with the verdict on the ground that it was excessive.

4. The request to amend the answer for the purpose of setting up a so-called release on the part of respondent was addressed to the discretion of the trial court, and under the circumstances we find no abuse of discretion in denying the same.

Affirmed.